**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

GAIL LeFOLL, individually and on behalf of        :
a class of similarly-situated individuals,        :
     Plaintiffs,        :
                                          :
v.        :        3:08-cv-1593 (WWE)
                                          :
KEY HYUNDAI OF MANCHESTER, LLC and        :
CITIZEN'S AUTOMOBILE FINANCE, INC.,        :
     Defendants.        :

**MEMORANDUM OF DECISION ON MOTION TO**
**DISMISS AND MOTION FOR CLASS CERTIFICATION**

Plaintiff Gail LeFoll brings this action on behalf of herself and all other similarly

situated individuals.  In her amended class action complaint (Doc. #44), she alleges

that defendants Key Hyundai of Manchester, LLC and Citizen's Automobile Finance,

Inc. violated the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), and the

Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq. ("CUTPA"),

by failing to disclose the first date that payment was due under a retail installment sales

contract for an automobile that each of the respective class members purchased.  Now

pending are defendants' motion to dismiss the class claims (Doc. #53) and plaintiff's

motion to certify the class (Doc. #57).  For the reasons which follow, defendants' motion

will be denied and plaintiff's motion will be granted.

**BACKGROUND**

For purposes of ruling on the motions, the Court construes all factual allegations

of the amended class action complaint as true.  In addition, the Court will review the

parties' exhibits submitted with their respective papers on the motion to certify the class.

1

Plaintiff is a consumer and resident of South Windsor, Connecticut.  Defendant Key operates an automobile dealership in Vernon, Connecticut.  Defendant Citizen's is a finance company that accepts the assignment of retail installment sales contracts for motor vehicles from automobile dealerships, including defendant Key.

Plaintiff purchased a Hyundai Sonata from Key pursuant to a retail installment sales contract on a form supplied to Key by Citizen's.  According to the contract, the purchase occurred on June 3, 2008.  The retail installment sales contract did not clearly disclose the date that the first payment was due because the contract form was not properly aligned in the computer, causing that term to be printed over a preprinted portion of the contract form.

The class consists of individuals who (1) purchased motor vehicles from Key pursuant to a retail installment sales contract on the form provided to plaintiff (2) whose amounts financed were $25,000 or less and (3) whose contract disclosures concerning the date that the first payment was due was printed over a preprinted portion of the contract.  There are 104 class members, including plaintiff.  Plaintiff alleges that her claim is typical of the class and that she is an adequate representative of the class.

The class members' retail installment contracts were assigned to Citizen's.  The failure to clearly disclose the dates that the first payments became due was apparent on the face of each of the contracts.

The vehicle purchased by plaintiff was subject to a $1,500 manufacturer's rebate.  Plaintiff told Key that she could afford payments of approximately $200 per month.  Key informed plaintiff that she would receive rebate payments in the amount of $150 per month, which could be used towards the monthly payments.  Key had plaintiff

2

sign a form in which she elected to apply the rebate to the purchase of the vehicle and assign the rebate to Key.  Such option did not credit her for the rebate amount. Instead, Key deposited the funds into a bank account without plaintiff's knowledge or consent, thereby profiting from plaintiff and causing her to suffer losses in the form of lost interest on the funds as well as bank fees deducted from the account when plaintiff demanded that the rebate be returned to her.  When plaintiff took delivery of the vehicle, she received a debit card for the rebate amount instead of a check.  Plaintiff complained to Key and she received payment for the rebate, less five dollars in bank charges.

According to the amended complaint, plaintiff seeks "actual and damages pursuant to 15 U.S.C. § 1640" [sic].

## DISCUSSION

### I.    Motion to Dismiss

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader.  Hishon v. King, 467 U.S. 69, 73 (1984).  The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A plaintiff is obliged to amplify a claim with some factual allegations to allow the

court to draw the reasonable inference that the defendant is liable for the alleged conduct.  Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937 (2009).

Defendants assert that the Court may dismiss plaintiff's class claims under Federal Rule of Civil Procedure 12(b)(6) because they fail to satisfy the requirements of Federal Rule of Civil Procedure 23.  The Court will deny defendants' motion to dismiss under Rule 12(b)(6) in light of plaintiff's pending motion to certify the class.  The analysis under Rule 23 is more appropriate in determining whether plaintiff has met her burden than a Rule 12(b)(6) analysis would be to determine if the requirements under Rule 23 are met.[1]  This conclusion has no bearing on the Rule 23 analysis.

## II.    Motion to Certify Class

To receive class certification, plaintiff must first satisfy the four elements of Rule 23(a): numerosity, commonality, typicality and adequacy of representation.  Plaintiff must then meet at least one of the three subsections of Rule 23(b).  McLaughlin v. American Tobacco Co., 522 F.3d 215, 222 (2d Cir. 2008).  Rule 23(b)(1) is satisfied where the prosecution of separate actions by or against individual members of the class would create a risk of:

> (A) inconsistent or varying adjudications ... which would establish incompatible standards for the party opposing the class, or (B) adjudications with respect to the individual members of the class which would be dispositive of the interest of the other members not parties to the adjudications.

_____

[1]    Defendants cite to Reilly v. Gould, Inc., 965 F. Supp. 588 (M.D. Pa. 1997) as an example of a federal court granting a Rule 12(b)(6) motion to dismiss the class action allegations.  In that case, the ruling was a straight analysis under Rule 23.  In light of the pending Rule 23 motion, there is no prejudice to defendants by the Court's decision to deny their motion.

Rule 23(b)(2) applies where injunctive or declaratory relief is sought that is appropriate respecting the class as a whole.  Rule 23(b)(3) provides that a class may also be certified where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly efficiently adjudicating the controversy."  Rule 23 is to be construed liberally, rather than restrictively, and the district court is to adopt a standard of flexibility.  See Richards v. Fleetboston Fin. Corp., 238 F.R.D. 345, 348 (D. Conn. 2006).

### A.      Numerosity

Rule 23(a)(1) requires a finding by the court that "the class is so numerous that joinder of all members is impracticable."  Courts in the Second Circuit have found this requirement met by a class consisting of forty or more members.  See, e.g., Collins v. Olin Corp., 248 F.R.D. 95, 101 (D. Conn. 2008) ("While there is no predetermined number of plaintiffs necessary to certify a class, courts generally have found a class consisting of 40 or more members to be sufficient.").

There are 104 individuals, including plaintiff, in this class action.  Therefore, the numerosity requirement is met.

### B.      Common Questions of Law and Fact

Rule 23(a)(2) requires a showing of "questions of law or fact common to the class."  "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."  Marisol  A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997).  A single question of law suffices to satisfy the commonality requirement.  Monaco v.

5

Stone, 187 F.R.D. 50, 61 (E.D.N.Y. 1999).  Defendants do not dispute plaintiff's

assertion that the commonality requirement is met.  Therefore, the Court will find that

the commonality requirement is met.

      **C.**    **Typicality**

      Rule 23(a)(3) "requires that the claims of the class representatives be typical of

those of the class, and is satisfied when each class member's claim arises from the

same course of events, and each class member makes similar legal arguments to

prove the defendant's liability."  Robinson v. Metro-North Commuter R.R., 267 F.3d

147, 155 (2d Cir. 2001).  "Differences in the degree of harm suffered, or even in the

ability to prove damages, do not vitiate the typicality of a representative's claims."

Ouellette v. Int'l Paper Co., 86 F.R.D. 476, 480 (D. Vt. 1980).  The typicality and

commonality requirements tend to merge into one another, and similar considerations

guide both analyses.  See Marisol A., 126 F.3d at 376.  It is not required that the

underlying facts be identical for all class members.  Instead, the typicality requirement

"requires that the disputed issue of law or fact occupy essentially the same degree of

centrality to the named plaintiff's claim as to that of other members of the proposed

class."  Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999).

      Defendants argue that the typicality requirement is not met because each class

member will have a unique misprinted contract.  It is clear that the alleged unlawful

conduct was the same for LeFoll and the class members, regardless of the varying

facts which underlie the individual claims.  See Labbate-D'Alauro v. GC Servs. Ltd.

P'ship, 168 F.R.D. 451, 456-457 (E.D.N.Y. 1996) ("When the same unlawful conduct

was directed at both the named plaintiff and the class to be represented, the typicality

requirement is usually met irrespective of varying fact patterns which underlie individual claims."). LeFoll and the individual class members would make analogous arguments to show their claims under TILA, even if the details of the individual contracts may differ. See Parker v. Time Warner Entm't Co., L.P., 239 F.R.D. 318, 330 (E.D.N.Y. 2007) (certifying class even when individual class member's evidentiary showings would necessarily differ). Therefore, the Court finds that the typicality requirement is met.

### D.    Adequacy of Representation

Finally, under Rule 23(a)(4), the court must examine whether the named plaintiff's interests "are antagonistic" to that of the other members of the class. In re Visa Check/Master Money Antitrust Litig., 280 F.3d 124, 142 (2d Cir. 2001). A class representative must have "a sufficient interest in the outcome of the case to ensure vigorous advocacy." Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co. Inc., 229 F.R.D. 395, 413 (S.D.N.Y. 2004). A plaintiff must also have attorneys who are "qualified, experienced, and generally able to conduct the litigation." In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992).

In this case, defendants do not challenge that LeFoll will adequately represent the class nor do they challenge the qualifications of plaintiff's counsel. Therefore, for the reasons stated in plaintiff's papers, the Court finds this standard met.

### E.    Predominance

Rule 23(b)(3) requires that the court find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy."  As the Court of Appeals has stated,

"[c]lass-wide issues predominate if resolution of some of the legal or factual questions

that qualify each class member's case as a genuine controversy can be achieved

through generalized proof, and if these particular issues are more substantial than the

issues subject only to individualized proof."  Moore v. PaineWebber, Inc., 306 F.3d

1247, 1252 (2d Cir. 2002).

Defendants contend that the individualized nature of the contracts means that

the individual issues predominate over the class-wide issues.  Each class member's

contract that plaintiff has provided is similar insofar as the date of the first payment was

not printed in the proper place, but was instead printed over preprinted text.  As this fact

is the gravamen of plaintiff's class action and is common to all of the class members,

the Court finds that the group issues predominate over the individual issues.  See

Passeggio v. Cosmetique Inc., 1999 U.S. Dist. LEXIS 7607, *27-28 (E.D.N.Y. Apr. 30,

1999).  This conclusion is buttressed by the fact that the standard for demonstrating a

claim under TILA is an objective standard and does not require each class member to

set forth his confusion.  See, e.g., Aubin v. Residential Funding Co., LLC, 565 F. Supp.

2d 392, 395 (D. Conn. 2008) ("Although there is some disagreement as to what

constitutes 'clear and conspicuous' notice, courts generally agree that it is measured by

an objective, rather than a subjective test; thus, the question courts ask is whether the

average consumer would find the notice clear or confusing.").

Defendants point out that issues related to damages may require individualized

examination that would defeat the predominance factor.  They identify the fact that

plaintiff demanded, in her amended complaint, "actual and damages pursuant to 15

8

U.S.C. § 1640."  Plaintiff specifies in her papers that this was a typographical error, and she, as representative of the class, seeks only statutory damages, knowing of no actual damages that any of the class members have suffered.  While there is a difference between how much a plaintiff can recover in a TILA class action versus one prosecuted as an individual action, the minimal recoveries likely for the individual class members means that a class action is likely to be a more efficient method of litigating their actions.  Compare 15 U.S.C. § 1640(a)(2)(A) (providing minimum recovery in case of individual action) with 15 U.S.C. § 1640(a)(2)(B) (providing no minimum recover for each class member); see Amchem Prods. v. Windsor, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").  In light of the fact that plaintiff and the class members seek only statutory damages, this distinction is not significant.

Therefore, the Court finds that group issues predominate over individual issues.

Based on the allegations of the amended class action complaint, the Court finds sufficient basis to certify the class and will grant plaintiff's motion for class certification as to plaintiff's TILA claims.

**CONCLUSION**

For the foregoing reasons, the Court DENIES defendants' motion to dismiss (Doc. #53) and GRANTS plaintiff's motion to certify the class (Doc. #57) as to the TILA claims.

Dated at Bridgeport, Connecticut, this 6th day of May, 2010.

_____/s/_____
Warren W. Eginton
Senior United States District Judge

10